UNITED STATES DISTRICT COURT
SOUTHERN DISTIRCT OF OHIO
WESTERN DIVISION

DMK DEVELOPMENT GROUP, LLC,

    Plaintiff,

  v.

COLE + RUSSELL ARCHITECTS, INC.,

    Defendant/Third-Party Plaintiff,

  v.

PRATER ENGINEERING ASSOCIATES, INC.,

    Third-Party Defendant.

Case No. 1:19-cv-301
JUDGE DOUGLAS R. COLE

## OPINION & ORDER

This cause comes before the Court on Third-Party Defendant Prater Engineering Associates, Inc.'s ("Prater") Motion for Partial Judgment on the Pleadings (Doc. 14) and Defendant/Third-Party Plaintiff Cole + Russell Architects, Inc.'s ("CR") Motion for Partial Judgment on the Pleadings (Doc. 15). For the reasons stated more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Prater's Motion (Doc. 14) and **GRANTS** CR's Motion (Doc. 15), consistent with this Opinion and Order.

## BACKGROUND

This case arises from two agreements to perform architectural services in connection with the development of two senior housing communities in southern

Ohio. The parties refer to these projects as the Trilogy Springfield Project and the Trilogy Cincinnati Project (collectively, the "Projects"). (DMK's Compl. at ¶¶ 10–11, Doc. 1, #2–3). CR and Plaintiff DMK Development Group, LLC ("DMK") were parties to the primary agreement (the "DMK-CR Agreement"), which obligated CR to provide certain specified architectural services in connection with the construction of the two assisted living facilities. (*Id.*). The DMK-CR Agreement contained the following provision purporting to limit CR's liability:

> In recognition of the relative risks, rewards and benefits of the Project to both [DMK] and [CR], the risks have been allocated such that [DMK] agrees to limit [CR]'s liability for any and all claims, losses, costs, expenses and/or damages of any nature whatsoever from negligent errors or omissions or causes, including reasonable attorney's fees and costs and expert witness fees and costs, so that the total aggregate liability of [CR] shall not exceed the amount of [CR]'s fee, or, if then outstanding, such portion of the fee actually paid by [DMK]. It is intended that this limitation shall apply to any and all liability or cause of action however alleged or arising, unless otherwise prohibited by law.

(CR's Answer, Countercl., & Third-Party Compl. ("CR's Third-Party Compl."), Ex. A at #63, Doc. 4-1; DMK's Compl., Ex. A at #17, Doc. 1-1).

CR then entered a subconsultant agreement with Prater (the "CR-Prater Agreement"), an engineering firm, under which Prater agreed to provide engineering services to ensure that the designs for the two projects complied with certain ventilation and indoor air quality requirements. (CR's Third-Party Compl. at ¶ 6, Doc. 4, #47). The CR-Prater Agreement contained the following incorporation clause:

> [Prater] acknowledges that CR has entered or intends to enter a Prime Agreement with [DMK], which is incorporated by reference and made part of this Request, or any subsequent and related agreement between CR and [Prater]. CR shall assume towards [Prater] all obligations and responsibilities that [DMK] assumes toward CR, and

2

> [Prater] assumes towards CR all the obligations and responsibilities that CR assumes toward [DMK]. CR shall have the benefit of all rights, remedies and redress against [Prater] that [DMK], under the Prime Agreement, has against CR, and [Prater] shall have all the benefit of the rights, remedies, and redress against CR that CR under the Prime Agreement, has against [DMK]. Where a provision of the Prime Agreement is inconsistent or in conflict with a provision of this Request, or any subsequent and related agreement between CR and [Prater], the Prime Agreement shall govern. Absent CR's fees or compensation, a copy of the Prime Agreement is available to [Prater].

(*Id.*, Ex. B at #66–67 n.1, Doc. 4-2).

At some point after the parties entered into those agreements, the contractual relationships fell apart. (The pleadings do not explain what exactly caused the alleged breaches or when they occurred.)

In any event, DMK initiated this lawsuit on April 26, 2019, asserting three causes of actions against CR for breach of contract, professional negligence, and indemnity arising from CR's alleged failure to properly design and prepare construction documents and to perform limited construction observation in connection with the Projects. (DMK's Compl. at ¶¶ 10–11, Doc. 1, #2–3). In response to DMK's Complaint, CR filed an Answer, Counterclaim, and Third-Party Complaint. (Doc. 4). In its pleading, CR denied DMK's allegations, asserted breach of contract and unjust enrichment counterclaims against DMK, and lodged indemnity, breach of contract, negligence, and contribution and apportionment claims against Prater. (*See id.*, #39–52).

Now before the Court are two Motions for Partial Judgment on the Pleadings, filed separately by Prater and CR.

3

In CR's Motion, CR requests that the Court enter partial judgment in its favor because, in its view, the DMK-CR Agreement caps CR's total potential liability to DMK for the alleged breaches of contract and professional negligence at the amount CR received in professional fees from DMK under that agreement. Unsurprisingly, DMK was the only party to oppose CR's Motion. According to DMK, the "limitation of liability" provision in the DMK-CR Agreement only applies to DMK's breach of contract claim against CR. The cap does not limit liability on the professional negligence claim, says DMK, as the latter claim arose from CR's independent "professional" duty as an architect. Separately, assuming that the "limitation of liability" provision applies to some or all of DMK's claims against CR, the parties also disagree about how to calculate the amount of the cap on damages under that provision.

Prater's Motion presents similar arguments based on the incorporation clause in the CR-Prater Agreement, which grants Prater "the benefit of the rights, remedies, and redress against CR that CR under the Prime Agreement, has against [DMK]." (CR's Third-Party Compl., Ex. B at #66–67 n.1). According to Prater, this clause limits Prater's potential liability under the CR-Prater Agreement to the amount of the fee that Prater received under the CR-Prater Agreement (just like the DMK-CR Agreement limited DMK to the fee that CR received). CR opposes Prater's Motion, arguing that Prater is misstating the effect of the incorporation clause in the CR-Prater Agreement. According to CR, that clause granted Prater the same rights under the CR-Prater Agreement that CR had under the DMK-CR Agreement. That means,

4

CR says, that the CR-Prater Agreement caps Prater's liability, but that the cap is at the amount of fees *that CR received under the DMK-CR Agreement*, not the amount of fees that Prater received under the CR-Prater Agreement, as Prater contends.

## LAW AND ANALYSIS

**A.  Standard Of Review.**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). This means all factual allegations in the complaint are construed in a light most favorable to the plaintiff, with all their allegations accepted as true, and all reasonable inferences drawn in their favor. *See Bullington v. Bedford Cty.*, 905 F.3d 467, 469 (6th Cir. 2018). All a plaintiff need do is provide "a short and plain statement of the claim showing that the pleader is intitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

But that short and plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir.

5

2008) (quotation omitted). "Conclusory allegations or legal conclusion masquerading as factual allegations will not suffice." *Id.* (citing *Meziboy v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

**B.    CR's Motion For Partial Judgment On The Pleadings.**

In its motion, CR asks the Court for an Order that limits CR's total potential liability to DMK on the claims that DMK has alleged against CR.[1] As a starting point, DMK and CR agree on one thing—they both acknowledge that the limitation of liability provision in the DMK-CR Agreement validly caps CR's liability for damages on the breach of contract claim, and that it limits such damages to "the amount of [CR]'s fee, or if then outstanding, such portion of the fee actually paid by [DMK]." (CR's Third-Party Compl., Ex. A at #63). But that agreement leaves two key points of dispute. First, DMK and CR disagree as to whether the contractual limitation of liability provision also validly limits damages related to DMK's professional negligence claim against CR. Second, the parties dispute whether the clause limits CR's liability for the breach of contract claim to: (1) the amount that DMK had paid to CR when DMK filed this lawsuit (which appears to be $372,041.42 (*see* DMK's

---

[1] The parties do not separately and specifically discuss the indemnification claim. At the same time, as the analysis set forth herein applies to all claims that arise from the contractual relationship between the parties, however those claims are labeled, that would include within its sweep any indemnification theory.

6

Resp. at #165 n.2)); or rather (2) the amount that DMK will pay to CR under the contract should CR prevail on its breach of contract claim (which apparently seeks another $74,235.56). The Court addresses the issues in that order.

### 1. The Limitation Of Liability Provision In The DMK-CR Agreement Applies To DMK's Professional Negligence Claim.

In Ohio, if a contract is unambiguous, then its interpretation is a matter of law. *Inland Refuse Transfer Co. v. Browning-Ferris Indus., Inc.*, 474 N.E.2d 271, 272 (Ohio 1984). And, absent a specific showing that it runs afoul of a public policy concern or is unconscionable, courts applying Ohio law will uphold unambiguous limitation of liability clauses in commercial contracts under the traditional principle of freedom of contract. *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56, 63, 166 N.E. 887, 889 (Ohio 1929); *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St. 2d 147, 158, 375 N.E.2d 410 (Ohio 1978). Here, DMK agreed "to limit [CR]'s liability for any and all claims, losses, costs, expenses and/or damages of any nature whatsoever from negligent errors or omissions or causes … so that the total aggregate liability of [CR] shall not exceed the amount of [CR]'s fee, or, if then outstanding, such portion of the fee actually paid by [DMK]." (CR's Third-Party Compl., Ex. B at #66–67, n.1). The parties agree that the DMK-CR Agreement's limitation of liability is unambiguous and legally sound. Thus, DMK takes no issue with the Court's general application of that provision to the breach of contract claim.

Where DMK and CR part ways, however, is on the question of whether that same provision restricts the damages resulting from DMK's professional negligence claim. DMK argues that the provision does not cap the damages related to that cause

of action because it arises from CR's alleged breach of an independent duty—the professional standard of care that any architect must perform. But, for at least two reasons, that argument fails here. First, the professional negligence claim against CR sounds in contract, not in tort, and so, by DMK's own admission, the limitation of liability provision applies to it, too. Second, even if DMK could establish a separate professional negligence claim arising in tort here, it has not explained why the limitation of liability provision caps damages arising only from contracts and not also from torts.

Starting with the first issue, under Ohio law, a cognizable tort action must allege a breach "of some positive duty imposed by law because of the relationship of the parties, rather than … a mere omission to perform a contract obligation." *Cork-Howard Constr. Co. v. Dirty D. Props., LLC*, No. 16-cv-1964, 2017 WL 5574145, *2 (N.D. Ohio Nov. 20, 2017) (citing *Bowman v. Goldsmith Bros. Co.*, 109 N.E.2d 556, 557 (Ohio Ct. App. 1952)). Additionally, a proper tort claim "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Babcock & Wilcox Power Generation Grp., Inc. v. R.T. Patterson Co.*, No. 5:13-cv-2071, 2015 WL 631189, *2 (N.D. Ohio Feb. 12, 2015) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996)).

With those extra requirements to establish a claim for tort in mind, consider DMK's Complaint. There, DMK alleges CR breached the DMK-CR Agreement by:

8

a.) Failing to perform and provide design services consistent with the degree of care and skill ordinarily exercised by members of the same profession currently practicing under similar circumstances.

b.) Failing to provide design, services, work and materials in compliance with the applicable ASHRAE requirements for the Projects which resulted in the tear out, redesign, rework and installation of construction work to comply with applicable laws, rules and regulations.

c.) Failing to provide design services, work and materials in compliance with the applicable NFPA 101/high hazard requirements for the Projects which resulted in the tear out, redesign, rework and installation of construction work to comply with the applicable laws, rules and regulations.

(DMK's Compl. at ¶ 15, #4).

DMK then relists the *identical* duties and breaches when pleading its professional negligence claim against CR. (*Id.* at ¶ 21, #4). Thus, the only obligation DMK identifies in the Complaint is CR's duty to perform services in a manner consistent with professional standards, a duty DMK concedes is included, expressly or impliedly, in its contract with CR. Compounding the problem, DMK recycles its damages allegations for both causes of actions. *See Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) ("When the promissee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract."). Accordingly, DMK's contract claim and professional negligence claim are not separate causes of action arising from independent duties, but rather, are a single claim grounded in contract law only. *See Hilsinger Bldg. & Dev. Corp. v. Terracon Consult., Inc.*, No. 1:18-cv-900, 2019 WL 4601774, *7–8 (S.D. Ohio Sep. 23, 2019) (finding that, because the substance of

plaintiffs' negligence and breach of duties claims amounted to an alleged breach of contract for failing to perform services in accordance with professional standards, the plaintiffs' negligence and breach of duties claims sounded only in contract).

To the extent that DMK argues that Ohio courts have recognized that an architect's professional duties exist independent of any contract, the Court finds that contention at best only partially true and, properly understood, of no benefit to DMK here. To be sure, under Ohio law an architect has a professional standard of care that exists regardless of any contract. *B & B Constr. & Dev., Inc. v. Olsavsky Jaminet Architects, Inc.*, 984 N.E.2d 419, 427 (Ohio Ct. App. 2012) (noting the architect-defendant conceded that, absent the contract, it still had a duty of professional care). But, when a contract between a party and an architect obligates the architect to exercise that same professional standard of care when completing the tasks called for by the agreement, then the architect's professional duties and contractually duties are no longer independent of one another. Rather, the professional negligence cause of action (somewhat of a hybrid between common law tort duties and the legal obligations arising as a provider of professional services) essentially merges with the contract cause of action. *See Hilsinger Bldg. & Dev. Corp.*, 2019 WL 4601774, at *7 (finding that because the only duty the plaintiffs relied upon arises out of the parties' agreement, the plaintiffs' claims were "grounded in contract law only").

Further confirmation for this result comes from Ohio's privity rules, which bar tort claims to recover economic damages in the absence of privity of contract—a limitation typically referred to as the economic-loss doctrine. *Floor Craft Floor*

*Covering, Inc. v. Parma Comm. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 560 N.E.2d 206 (Ohio 1990). As noted above, there is little doubt that, as an architecture firm, CR had professional duties that existed even without the contract at issue. *See B & B Constr. & Dev., Inc.*, 984 N.E.2d at 427. But how did the breach of that independent professional duty impact DMK in any way in this case, except economically? And if the harm here is solely economic, had the parties never entered into the DMK-CR Agreement, the economic-loss doctrine surely would bar DMK from recovery on a professional negligence theory. *Spring Creek Condo. Ass'n v. Colony Dev. Corp.*, 2008-Ohio-1420, 2018 WL 802729 (Ohio Ct. App. 2008). Thus, CR's independent duty as an architect would provide no benefit to DMK in terms of potential recovery, absent the contract. Put differently, it is only the existence of the contract here that provides a pathway to recovery for the economic losses that DMK sustained as a result of CR's alleged breach of its duties. *Evans Landscaping, Inc. v. Stegner*, 969 N.E.2d 1264, 1268–69 (Ohio Ct. App. 2011). And here, that contract is between sophisticated commercial entities that negotiated, bargained, and ultimately agreed on the terms that would govern their relationship (some of which explicitly limit exposure). Accordingly, because DMK's right to recovery for its alleged economic harms, even on the professional duty claim, depends upon the DMK-CR Agreement, DMK's claims are grounded in contract, and there is no independent, separate purely tort law cause of action. Thus, as DMK admits that the damages cap validly applies to its contract claim, that same cap necessarily applies to its professional negligence claim, which sounds in contract despite DMK's efforts to label it otherwise.

11

Separately, even if the professional negligence claim did sound in tort, the same result would follow, albeit for slightly different reasons. According to DMK, when an independent tort claim exists, Ohio law permits a plaintiff to recover damages different from or beyond those that would be available under contract. (DMK's Resp. at #166 (citing *R&H Trucking v. Occidental Fire & Cas. Co.*, 441 N.E.2d 816 (Ohio Ct. App. 1981))). That may well be the case, but that is not the end of the story. Just because Ohio law may permit such recovery in the abstract, does not mean that parties cannot agree to alter those background rules through a contract between them. Here, DMK and CR unambiguously agreed "to limit [CR]'s liability for any and all claims, losses, costs, expenses and/or damages of any nature whatsoever from negligent errors or omissions or causes[.]" (CR's Third-Party Compl., Ex. A at #63). Through this provision, the parties clearly attempted to limit CR's liability for negligence at a specified amount.

To be sure, such contractual limitation of liability provisions regarding negligence are "disfavored." *Orlett v. Suburban Propane*, 561 N.E.2d 1066, 1069 (Ohio 1989). But, absent unconscionable or ambiguous language in the provision, a disparity in bargaining power between the parties, or harm resulting from a party's failure to exercise any care whatsoever, "contracts limiting liability for negligence will be upheld on a theory of freedom of contract." *Id.* (citing *Mansfield Mut. Ins. Co. v. Cleveland, Cincinnati, Chi. & St. Louis R.R. Co.*, 74 Ohio St. 30, 77 N.E. 269 (Ohio 1906)); *Richard A. Berjian, D.O., Inc.*, 54 Ohio St. 2d at 158.

12

Neither party contends that any of those concerns are present here. This is not a case, for example, where the clause at issue prevents any liability at all (i.e., an exculpatory clause). Rather, here the limit of liability is directly tied to the value exchanged in the contract. Accordingly, the Court finds that, based on the plain language of the DMK-CR Agreement's limitation of liability provision, and in the absence of any identified circumstances that warrant the Court to retrade or undo the parties' bargain, the limiting clause validly caps the damages that DMK can recover for its professional negligence claim, whether that claim sounds in contract or tort.

      **2.    The Court Declines To Decide The Specific Amount Of The Liability Cap At This Juncture.**

Having determined that the limitation applies, there is a separate question as to the amount of the cap. More specifically, in its Response to CR's Motion for Partial Judgment on the Pleadings, DMK requests the Court to determine whether the capped amount is the amount that DMK had paid at the time it filed suit, or rather the amount that CR will receive under the contract, should it ultimately prevail on its counterclaim in this action. CR did not raise that issue in its own motion, though, and DMK has not separately moved for judgment on the pleadings. Accordingly, given the way in which the issue arose, as well as the lack of sufficient factual information in the current record to resolve that dispute, the Court elects to refrain from addressing that issue now.

13

**B.     Prater's Motion For Partial Judgment On The Pleadings.**

Separately, Prater also moves for partial judgment on the pleadings, requesting an order from this Court limiting Prater's potential liability in this case. As discussed above, Prater is the third-party subcontractor defendant, who is a party to the CR-Prater Agreement. To the extent that CR is liable to DMK, CR seeks to recover from, or otherwise redirect fault toward, Prater under theories of indemnity, breach of contract, negligence, and contribution and apportionment. (Prater's Mot. for Partial J., Doc. 14, #101–02).

Prater argues in its Motion for Partial Judgment on the Pleadings, that, for two reasons, the CR-Prater Agreement limits its total liability in this case. First, Prater contends that the CR-Prater Agreement incorporates the DMK-CR Agreement, particularly the latter's limitation of liability provision discussed at length above, so that, as a functional matter, Prater is entitled to the same rights as CR under that agreement. (Prater's Mot. for Partial J. at #105). On that point, CR (the only party to oppose Prater's Motion) agrees and so concedes that the CR-Prater Agreement incorporates the DMK-CR Agreement. (CR's Resp. at #140).

Second, Prater argues that, because the incorporation provision grants it all the rights that CR has under the DMK-CR Agreement, Prater's limitation of liability cannot exceed the amount of fees that *Prater received from CR under the CR-Prater Agreement*. (Prater's Mot. for Partial J. at #106). CR disagrees with this assertion. (CR's Resp. at #140–41). CR contends that Prater's argument misreads the limitation of liability provision's language and in doing so reallocates risk between the parties

14

to the CR-Prater Agreement in a manner that the agreement does not contemplate. The Court agrees with CR.

The plain language of the CR-Prater Agreement's incorporation clause only grants Prater the derivative right to limit its liability to the same amount as specified under the DMK-CR Agreement. Nothing in either agreement suggests that Prater has a right to a liability limitation that is calculated in any other manner, particularly by reference to the fees that CR pays to Prater. Rather, the CR-Prater Agreement grants Prater "all the benefit of the rights, remedies, and redress against CR that CR, under the [DMK-CR Agreement], has against [DMK]." (CR's Third-Party Compl., Ex. B at #66–67). The limit on CR's liability is set to a specific amount by the DMK-CR Agreement—the liability "shall not exceed the amount of [CR]'s fee, or, if then outstanding, such portion of the fee actually paid by [DMK]." (CR's Third-Party Compl., Ex. A at #63). The CR-Prater Agreement thus in turn adopts that same limit—the fee that CR receives under the DMK-CR Agreement—as Prater's maximum liability to CR. If CR and Prater instead intended to limit Prater's liability to the fee that Prater received from CR, they should have made that intention clear. Accordingly, the Court finds that the express terms of the agreements at issue here limit Prater's total aggregate liability under the CR-Prater Agreement to the same amount as CR's total aggregate liability under the DMK-CR Agreement.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Prater's Motion for Partial Judgment on the Pleadings (Doc. 14) and **GRANTS** CR's Motion for Partial Judgment on the Pleadings (Doc. 15).

    **SO ORDERED.**

May 8, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**